## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 15-00477-TLM** |
| **TIMOTHY RESLER and** | ) | |
| **KIMBERLY RESLER,** | ) | |
| | ) | **Chapter 7** |
| Debtors. | ) | |
| ——————————————— | ) | |
| | ) | |
| **TIMOTHY RESLER, an** | ) | |
| **individual,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 18-06020-TLM** |
| | ) | |
| **BEN HELTON, an individual;** | ) | |
| **MINERAL KING, LLC d/b/a** | ) | |
| **TOTAL MAINTENANCE** | ) | |
| **SOLUTIONS, an Idaho limited** | ) | |
| **liability company,** | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

### MEMORANDUM OF DECISION
_____

**INTRODUCTION**

On April 16, 2015, Timothy Resler ("Resler") and Kimberly Resler

(collectively, "Debtors") filed a petition under chapter 7.[1]  That case remains open

_____

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, references to the "Rules" are to the Federal Rules of Bankruptcy Procedure, and references to the "Civil Rules" are to the Federal Rules of Civil Procedure.  Additionally, "Adv. Doc. No." refers to filings in the instant adversary proceeding, while "Doc. No." refers to
(continued...)

MEMORANDUM OF DECISION - 1

and is being administered by the chapter 7 trustee, Janine Reynard ("Trustee").[2]

On May 30, 2018, Resler filed in the District Court of the Fourth Judicial District of the State of Idaho, Ada County, a complaint against Ben Helton ("Helton") and Mineral King, LLC d/b/a Total Maintenance Solutions ("Mineral King"), that was assigned Case No. CV01-18-10080 (the "State Court Action"). *See* Adv. Doc. No. 1-1 ("Complaint"). On July 5, 2018, Helton and Mineral King filed a notice of removal of the State Court Action to this Court. Adv. Doc. No. 1. ("Removal Notice"). On August 8, 2018, Resler filed a motion to remand the State Court Action. Adv. Doc. No. 3 ("Remand Motion"). Helton and Mineral King (together the "Defendants") objected to the Remand Motion, as did the Trustee. Adv. Doc. Nos. 4, 5 (the "Objections").

The Remand Motion and Objections were heard on September 10, 2018, and taken under advisement. The Court resolves the matter by this Decision.[3]

**AUTHORITIES**

  **A.    Requirements and procedures for removal**

---

[1] (...continued)
those filed in Debtors' bankruptcy, Case No. 15-00477-TLM.

[2] The Court denied Debtors' discharge under §§ 727(a)(2) and 727(a)(4) in *United States Trustee v. Resler*, Adv. Proc. 15-06062-TLM. Debtors appealed that decision and the appeal remains pending.

[3] The Remand Motion is governed by Rule 9027(d) and constitutes a contested matter. *Id.* (citing Rule 9014). This Decision constitutes the Court's findings and conclusions to the extent required by Rule 9014(c)'s incorporation of Rule 7052.

MEMORANDUM OF DECISION - 2

Rule 9027(a) requires a notice of removal under 28 U.S.C. § 1452 to "contain a short and plain statement of the facts which entitle the party filing the notice" to removal, and it also requires that party to state whether it "does or does not consent to entry of final orders or judgment by the bankruptcy court[.]"  The Removal Notice here asserts that removal is made "[p]ursuant to 28 U.S.C. §§ 1452, 1478, and Bankruptcy Rule 9027[.]"  It also alleges this Court has jurisdiction under 28 U.S.C. § 1334.[4]  The Removal Notice also asserts this litigation "is a 'core proceeding' under 28 U.S.C. § 157(b)(2)(O)" and that, under Rule 9027(a)(1) Defendants consent to entry of final orders and judgment by this Court.[5]

Removal under 28 U.S.C. § 1452(a) requires the district court to have

---

[4]  That assertion flows from an argument that, under § 541(a), all legal and equitable interests of the debtor in property as of the petition date constitute property of the estate; that Trustee has the exclusive authority under § 704(a)(1) to collect and reduce to money all property of the estate; and that the State Court Action is an attempt by Resler to recover on prebankruptcy contractual rights that are property of the estate.  These arguments will be addressed *infra*.

[5]  In addition, Rule 9027(a)(3) establishes a deadline for the removal of an action commenced after a bankruptcy case has been filed.  The notice of removal must be filed within the shorter of (a) 30 days after receipt, through service or otherwise, of the initial pleading setting forth the claim or cause of action, or (b) 30 days after the receipt of the summons if the initial pleading was filed but not served with the summons.  While the summons were issued on May 30, 2018, Adv. Doc. No. 1-2, the date of service of the summons is not clear.  (Adv. Doc. No. 1-4, a copy of the docket in the state court, indicates an "affidavit of service" was filed on June 11, 2018, but does not show the actual date of service).  Defendants asserted in the July 5 Removal Notice that they filed the same within 30 days of service.  Adv. Doc. No. 1 at 4.  The assertion has not been contradicted by Resler.

MEMORANDUM OF DECISION - 3

jurisdiction under 28 U.S.C. § 1334.[6]  However, the guidance that has been

provided in connection with removal of actions to the U.S. District Court under 28

U.S.C. § 1332 and 1441(a) is instructive.  In *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th

Cir. 1992), the Court of Appeals stated:

> We strictly construe the removal statute against removal
> jurisdiction.  *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda
> v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985).
> Federal jurisdiction must be rejected if there is any doubt as to the right
> of removal in the first instance.  *Libhart v. Santa Monica Dairy Co.*,
> 592 F.2d 1062, 1064 (9th Cir. 1979).

980 F.2d at 566.  Additionally:

> The "strong presumption" against removal jurisdiction means
> that the defendant always has the burden of establishing that removal
> is proper.  *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709,
> 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190,
> 1195 (9th Cir. 1988).

*Id.  Gaus* further notes that "the defendant bears the burden of actually proving the

facts to support jurisdiction[.]"  *Id.* at 567 (addressing issue of proving

jurisdictional amount in controversy in a diversity case).[7]  In regard to that burden:

> The authority which the statute vests in the court to enforce the
> limitations of its jurisdiction precludes the idea that jurisdiction may be

---

[6]  While 28 U.S.C. § 1334 speaks to the District Court's jurisdiction, this Court exercises
that jurisdiction by reference from the District Court.  *See* 28 U.S.C. § 157; Third Amended
General Order 38, dated April 24, 1995.

[7]  *See also Prize Frize, Inc. v. Matrix Inc.,* 167 F.3d 1261, 1265 (9th Cir. 1999) (the
"burden is on the party seeking removal, and the removal statute is strictly construed against
removal jurisdiction"); *Redwood Theatres, Inc. v. Festival Enters.*, 908 F.2d 477, 479 (9th Cir.
1990) (the burden of establishing jurisdiction is on the removing party).

MEMORANDUM OF DECISION - 4

maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed[.]

*Id.* (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)).

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941), held that, in the context of removal, federal courts are required to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Thus, even without a party raising the issue, the Court must independently evaluate its jurisdiction. *See Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").[8] Moreover, a federal court must "examine the 'well pleaded' allegations of the complaint and ignore potential defenses" in determining its jurisdiction to hear an action removed from state court. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

The state court Complaint, for obvious reasons, makes no allegations regarding federal jurisdiction. This requires the Court to evaluate whether

---

[8] The Court may *sua sponte* review removed actions to confirm that federal jurisdiction is proper. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 824–26 (9th Cir. 2002); *Galvez v. Kuhn*, 933 F.2d 773, 775 n.4 (9th Cir. 1991).

MEMORANDUM OF DECISION - 5

Defendants have, by reference to the "well-pleaded" allegations of the Complaint, carried the burden of establishing the causes alleged fall within this Court's jurisdiction.

### 1.    Bankruptcy jurisdiction

Under 28 U.S.C. § 1334(b), the district court (and this Court by reference) has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  A proceeding "arises under" Title 11 when the cause of action is created or decided by a provision of Title 11.  *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995).   The term "arising in" refers to those matters that arise only in a bankruptcy case, *i.e.*, matters that are not based on any right created by Title 11 but which, nevertheless, would have no existence outside bankruptcy.  *Id.* (citing *In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987).

A civil proceeding is "related to" a case under Title 11 if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy," including those proceedings where "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting the definition from *Pacor, Inc. v. Higgins*, 743 F.2d 984,

MEMORANDUM OF DECISION - 6

994 (3d Cir. 1984)).

### 2.    Remand in the event the action is subject to removal

Assuming the removal is shown to be proper, a removed action may be remanded "on any equitable ground."  28 U.S.C. § 1452(b).  The "any equitable ground" standard "is an unusually broad grant of authority.  It subsumes and reaches beyond all the reasons for remand under nonbankruptcy removal statutes." *Lake Country Invs., LLC v. Stewart (In re Lake Country Invs., LLC)*, 2000 WL 33712216, *3 (Bankr. D. Idaho July 10, 2000) (quoting *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP 1999) (citation omitted)).

### B.    Application of the authorities to the Removal Notice

As noted above, the burden is on Defendants, as removing parties, to establish that the Court has jurisdiction over the removed action.  The Removal Notice's contentions regarding jurisdictional facts, Adv. Doc. No. 1 at 2–4, were challenged by Resler.  Adv. Doc. Nos. 3, 3-1.  At hearing, Defendants presented no evidence, nor did they request judicial notice under Fed. R. Evid. 201. Defendants rely instead on Resler's assertions in the Complaint, and on their interpretations and characterizations of the factual and legal effect of those assertions in the Removal Notice and their Objection to remand.

### 1.    The allegations of the Complaint

Consistent with the above authorities, and given Defendants' approach to

MEMORANDUM OF DECISION - 7

their burden, the Court will focus on the allegations made by Resler in the

Complaint.

Resler contends that he, along with Helton, was an "owner" of an Idaho

limited liability company called Total Maintenance Solutions, LLC ("TMS"), that

performed landscaping services.  Though there are unclear statements about TMS

being "dissolved" at some unidentified point, Resler asserts that in 2014 he "sold"

his TMS member interest to Helton.  Helton, in turn, and as part of the negotiation

regarding the purchase price for such interest, agreed to employ Resler as a full-

time consultant to TMS.  Resler and TMS entered into a July 2, 2014 consulting

agreement that provided for an annual $175,000 fee to Resler, payable monthly.

*See* Complaint at Ex. A, pp. 12–13 (the "Consulting Agreement").[9]  The

Consulting Agreement is between TMS and Resler alone; Helton is a signatory

only for TMS, and Mineral King is not involved.

Resler alleges Helton later wanted Mineral King to "formally purchase"

Resler's member interest in TMS, and that this required a second purchase and sale

agreement and another consulting agreement.  Helton purportedly discussed

dissolving TMS but ultimately determined Mineral King would take over use of

the TMS name and assume TMS's liabilities.  Resler asserts that he agreed, and

---

[9]  It is alleged that, since Resler was a guarantor of TMS's obligations to Idaho Trust Bank ("ITB"), ITB's approval was necessary for the sale and ITB required a written employment agreement (*i.e.*, the Consulting Agreement).  Nothing in the Complaint suggests that Resler got anything for the "sale" of his interest other than employment under the Consulting Agreement.

MEMORANDUM OF DECISION - 8

entered into and signed a second consulting agreement with Mineral King. This

subsequent agreement, unlike the Consulting Agreement, is not of record, and its

date is not clear. It allegedly required full-time services from Resler and again

provided a $175,000/year fee for those services.[10]

The Complaint then alleges Helton "convinced Resler" to cancel this

second consulting agreement on the basis that Resler, Helton and Bob Wheeler

would form a new company in which Resler would be an owner. Resler contends

he agreed and the second consulting agreement (*i.e.*, with Mineral King) was

"cancelled" in November 2014, but that he was still being paid under the earlier

and "original" TMS Consulting Agreement.

After Debtors filed bankruptcy in April 2015, Resler and Helton discussed

forming the new company, but that company was never created. Resler alleges

Helton instead formed a separate company, Cutting Edge Landscape, with

Wheeler, and that Mineral King ceased paying Resler's consulting fee in August

2015.

Resler retained counsel who made demands on Helton and Mineral King.

Resler claims a settlement was subsequently reached on April 26, 2018, under

which he would receive $160,000 from Helton and Mineral King, but that further

---

[10]  Neither of these suggested documents (the "second" purchase agreement and consulting agreement) were attached to the Complaint or otherwise provided in connection with the removal and remand litigation.

MEMORANDUM OF DECISION - 9

disputes arose.

The resulting State Court Action filed by Resler seeks damages for breach of this 2018 settlement agreement (which Resler argues was confirmed in various emails, though never reduced to a single, signed writing). Resler alleges, alternatively (*i.e.*, "[i]n the event the Court finds an enforceable settlement agreement was not reached"), that he should recover damages for breach of the July 2, 2014 Consulting Agreement that he contends Mineral King assumed and made payments under. Resler also asserts a count of fraud and intentional misrepresentation. Resler seeks a judgment of $160,000 under the alleged settlement agreement or, alternatively, compensatory damages for breach of the Consulting Agreement, or for fraud, in an amount to be proven at trial. He further seeks exemplary damages, attorneys' fees and costs, and pre- and post-judgment interest. The Complaint is verified by Resler.

### 2.    The disclosures in Debtors' bankruptcy case

As discussed above, Defendants were required to present sufficient facts to support their jurisdictional allegations and arguments. They relied solely on the Complaint's allegations and their legal argument. Though they did not request judicial notice of this Court's files and records in Debtors' chapter 7 case, the Court may take such notice *sua sponte*. Fed. R. Evid. 201(c), (d) (providing that the Court may take such notice on its own and at any stage of the proceeding). At

MEMORANDUM OF DECISION - 10

times, such judicial notice is "necessary to explain the history of [the] case, to

address certain procedural aspects, and to place the evidence in appropriate context

with events in the case and adversary proceedings." *U.S. Trustee v. Resler (In re

Resler)*, 583 B.R. 238, 242 (Bankr. D. Idaho 2018). While "taking notice of what

was filed, and when, does not mean that the contents of the filings necessarily have

evidentiary weight[,]" *In re Frantz*, 534 B.R. 378, 380 n.4 (Bankr. D. Idaho 2015)

(citations omitted), entries on a debtor's verified bankruptcy schedules and

statements, when offered against a debtor, may have evidentiary effect under Fed.

R. Evid. 801(d). *Id.* (citing *In re Vin Vinhnee*, 336 B.R. 437, 449 (9th Cir. BAP

2005); *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 444 n.32 (Bankr. D.

Idaho 2008)).

Debtors filed their petition for relief on April 16, 2015. Doc. No. 1. They

did not disclose any causes of action or claims against Helton or Mineral King. *Id.*

at 13.[11] They also did not disclose any current ownership or other interest in TMS,

or any interest in Mineral King. *Id.* at 12 (sched. B). They did disclose TMS as a

"co-debtor" on a number of obligations owed by Debtors. *Id.* at 46 (sched. H); *see

also* Doc. No. 27 at 9 (amendment).[12] Resler indicated he was "self-employed" as

a business consultant, for which he earned $19,000/month. Doc. No. 1 at 48

---

[11] No later amendments to schedule B disclose such claims. *See* Doc. Nos. 15, 27, 78.

[12] There were also other amendments to Debtors' schedules and statements throughout
their case. They have been reviewed and are found irrelevant to the present matter.

MEMORANDUM OF DECISION - 11

(sched. I).[13]  Debtors disclosed a September 2014 transfer of 2 ATVs and a pickup truck to Mineral King "as part of TMS sale to [Mineral King]."  *Id.* at 57 (Statement of Financial Affairs or "SOFA")).[14]  And they disclosed TMS as an LLC in which Resler previously had an interest between 2008 and 2015.  *Id.* at 59 (SOFA).[15]

Debtors did not identify or disclose any executory contracts.  *Id.* at 45 (sched. G).  There was never a disclosure, on schedule G, schedule I or otherwise, of the July 2, 2014 Consulting Agreement with its $175,000 "annual fee" paid monthly by TMS for Resler's consulting.

### 3.    Summary of arguments

In removing the state court action, Helton and Mineral King contend Resler's Complaint seeks recovery on alleged "contractual rights" under the July 2014 Consulting Agreement and that "The contractual right and alleged right to recovery are property of the [bankruptcy] estate to which the Trustee only has the

---

[13]  The Consulting Agreement's annual $175,000 fee was to be paid in 12 installments per year.  Adv. Doc. No. 1-1 at 12.  This suggests such agreement accounted for $14,683.33 of the monthly $19,000 income as a business consultant disclosed on schedule I.

[14]  There was, however, no disclosure of any "TMS sale" or any transfer of Resler's ownership interest in TMS.  While Trustee brought adversary proceedings related to certain allegedly avoidable prepetition transfers by Debtors, there were none in connection with any Debtor transfers to Mineral King or Helton.  The limitation period under § 546(a)(1) for such actions has passed.

[15]  This SOFA disclosure calls for identification of the "beginning" and "ending" dates of a debtor's interest in an entity.  The SOFA here effectively represents that Debtors' interests in TMS ended in 2015, prior to the petition's filing.

MEMORANDUM OF DECISION - 12

right to collect or enforce[.]" Adv. Doc. No. 1 at 2. However, Resler's brief supporting his Remand Motion asserts the causes of action for breach of the Consulting Agreement did not "accrue" until Mineral King ceased paying the consulting fee in August 2015, four months after the bankruptcy was filed. And he argues the creation of the 2018 settlement agreement, and its breach, occurred even later. Therefore, Resler contends, none of the claims are property of the estate. Adv. Doc. No. 3-1.

In objecting to the Remand Motion and in support of their removal of the Complaint, Helton and Mineral King argue the breaches of the Consulting Agreement and/or alleged settlement "relate to the larger ongoing transfers and transactions occurring pre-petition[.]" Adv. Doc. No. 5 at 4. They also argue removal was based on Resler's lawsuit being one that is "related to" the bankruptcy case. *Id.* Additionally, Helton and Mineral King argue that Resler should be barred, under judicial estoppel principles, from pursuing claims that arise under, in their view, an "undisclosed executory contract." *Id.* at 5.[16]

---

[16] Trustee is not a named party to the State Court Action. However, Trustee sought to intervene in it, arguing that the claims of Resler are "based upon a pre-petition Consulting Agreement dated July 2, 2014[.]" Adv. Doc. No. 1-5 at 1–2. It does not appear from the present record that such motion was ruled upon by the state court. Though Trustee is not yet a party to the State Court Action, she was allowed to argue at the hearing on the Remand Motion.

In her arguments, Trustee asserts Resler's filing of the Complaint violated § 362(a)(3). Adv. Doc. No. 6 at 2. This is an issue not properly before the Court, as Trustee would have to file a motion under § 105(a) to seek relief for a stay violation. *See Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192–93 (9th Cir. 1995) (trustee is not an "individual" entitled to seek damages under § 362(h) (now § 362(k)) ; *In re Lake Country Inves. Ltd. Liab. Co.*, 1999 WL

(continued...)

MEMORANDUM OF DECISION - 13

**DISCUSSION AND DISPOSITION**

The gravamen of the State Court Action is (a) Helton and Mineral King breached the July 2, 2014 Consulting Agreement by the failure, commencing in August 2015, to make payments to Resler; (b) Helton and Mineral King breached a settlement agreement that was allegedly reached in April 2018; and (c) fraud, misrepresentation and fraudulent inducement by Helton, predicated on Helton's representations from November 2014 to August 2015 that Resler would be an owner of and receive profits from a new company.

### A.    Claims regarding the 2014 Consulting Agreement

#### 1.    The "accrual" issues

The Court has previously evaluated the question of when an action accrues in the context of determining whether such action is a prepetition asset of a bankruptcy estate subject to the trustee's administration or a postpetition claim assertable by a debtor. *Avery v. Mikkelsen (In re Mikkelsen)*, 2018 WL 4182448 (Bankr. D. Idaho Aug. 30, 2018). It explained that property of the estate under § 541(a)(1) includes *accrued* causes of action even if the debtor was unaware of the claims at the time he filed the petition, but held that a cause of action that only

---

[16] (...continued)
33490220 *4–5 (Bankr. D. Idaho Sep. 22, 1999) (recognizing that, under *Pace*, while trustees who were natural persons could not use § 362(h), they were entitled to seek relief for stay violations under § 105(a)). The Court obviously does not speak here to the merit or lack of merit of such a contention.

MEMORANDUM OF DECISION - 14

accrues post-petition is not property of the estate under § 541(a)(1) or § 541(a)(7). *Id.* at \*3 (citing *Porrett v. Hillen (In re Porrett)*, 564 B.R. 57, 67–69 (D. Idaho 2016) (internal citations omitted)).  *See also Krohn v. Glaser (In re Glaser)*, 2019 WL 1075613, \*2 (9th Cir. BAP Mar. 5, 2019) ("Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not.").[17]

    To determine when a cause of action accrues, reference must be made to applicable state law.  *Mikkelson*, 2018 WL 4182448 at \*3 (citing *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001)).  In Idaho, where all the relevant conduct and transactions here have occurred, a "cause of action generally accrues, and the statute of limitation begins to run, when a party may maintain a lawsuit against another."  *Western Corp. v. Vanek*, 158 P.3d 313, 314 (Idaho App. 2006) (citing *Galbraith v. Vangas, Inc.*, 655 P.2d 119, 122 (Idaho App. 1982)).  A state court cause of action for breach of a written contract accrues upon breach even though no damages arise until later.  *Mason v. Tucker & Assocs.*, 871 P.2d 846, 853 (Idaho App. 1994).[18]

---

[17] *See also In re Bolton*, 584 B.R. 44, 49–52 (Bankr. D. Idaho 2018) (discussing, in determining property of the estate, the accrual of action for a products liability claim).

[18] *Bolton* considered whether the cause of action there, though accruing post-petition, could be considered property of the estate on the theory that it was "sufficiently rooted in the prebankruptcy past."  584 B.R. at 52–55 (discussing *Segal v. Rochelle*, 382 U.S. 375 (1966), and other authorities).  *Bolton* rejected that contention.  *Id.*  So did the BAP in *Glaser*.  2019 WL 1075613 at \*3–4 ("[I]t is not enough that a cause of action has some root in prepetition conduct or facts.  Rather, under *Segal*, it must be 'sufficiently' rooted.  Here, under [state] law, no property interest could come into existence until Debtors suffered damages which happened
                                                                              (continued...)

MEMORANDUM OF DECISION - 15

Resler contends the breach (*i.e.*, the failure to continue payments) occurred in August 2015, some four months post-petition. There is nothing in this record suggesting an earlier date. This is a post-petition cause of action.

### 2.    The Consulting Agreement as an executory contract

The July 2, 2014 Consulting Agreement is attached to the Complaint. Determining whether Debtors' interest in this agreement constitutes property of the estate is within the Court's 28 U.S.C. § 1334 jurisdiction. *Chiang v. Neilson (In re Death Row Records, Inc.)*, 2012 WL 952292, *14 (9th Cir. BAP March 21, 2012). That general grant of jurisdiction does not, however, conclude the analysis for purposes of removal or remand.

The Consulting Agreement requires Resler to provide services to TMS in the nature of business consulting and participation in daily operations and customer relations. Adv. Doc. No. 1-1 at 12. TMS is required to pay for those services. *Id.* There are other obligations imposed on Resler in regard to confidential information and non-competition. *Id.* at 13.

The Bankruptcy Code furnishes no express definition of an executory contract, but the legislative history to § 365(a) indicates "Congress intended the term to mean a contract 'on which performance is due to some extent on both

---

[18] (...continued)
postpetition.") Though the argument was not specifically or clearly advanced by Defendants here, the Court concludes, consistent with the analysis in *Bolton* and *Glaser*, that the "sufficiently rooted" theory is inapplicable to the removed claims.

MEMORANDUM OF DECISION - 16

sides.'" *In re Valley Club Homes, LLC.*, 2008 WL 2783258, *1 (Bankr. D. Idaho

July 15, 2008) (citing *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n.6

(1984) (quoting H.R. Rep. No. 95-595, p. 347 (1977)).  Under the accepted

"Countryman definition," a contract is executory if "the obligations of both parties

are so far unperformed that the failure of either party to complete performance

would constitute a material breach and thus excuse the performance of the other."

*Id.* at *1–2 (citation omitted).  The Consulting Agreement thus appears to qualify

as an executory contract.

It is significant, however, that under the Consulting Agreement, Resler was

required to personally perform certain services, and TMS was required to pay him

for the same.  This creates a "personal services contract."  Section 365(c) provides:

> The trustee may not assume or assign any executory contract or
> unexpired lease of the debtor, whether or not such contract or lease
> prohibits or restricts assignment of rights or delegation of duties, if –
>     (1)(A) applicable law excuses a party, other than the debtor, to
> such contract or lease from accepting performance from or rendering
> performance to an entity other than the debtor or the debtor in
> possession, whether or not such contract or lease prohibits or restricts
> assignment of rights or delegation of duties; and
>             (B) such party does not consent to such assumption or
> assignment[.]

11 U.S.C. § 365(c)(1)(A), (B).  As explained in an authoritative treatise:

> Under the common law, the duties under a contract to perform
> personal services could not be assigned.  If a party contracted for the
> services of a particular person, and that person's services were unique
> and could not equally be performed by another, the contract could not
> be assigned.

MEMORANDUM OF DECISION - 17

> Section 365(c) gives recognition to the common law restriction and provides that the trustee may not assume or assign such a contract, regardless of whether the contract contains an nonassignment clause. In this regard, section 365(c) recognizes that the trustee is not the party who originally undertook the duties under the contract and that applicable nonbankruptcy law would not accept substitute performance by the trustee.

3 COLLIER ON BANKRUPTCY ¶ 365.07[1][b], p. 365-65.  In *Hopkins v. Saratoga Holdings, LLC (In re Colvin)*, 2007 WL 4553352 (Bankr. D. Idaho Dec. 20, 2007), a debtor (Colvin) sold his interest in a limited liability company formed to run a fitness franchise business.  In return for his interest he was to receive a stream of payments.  Colvin also agreed not to disparage the reputation of that business or its remaining owners.  The Court stated:

> There is also a serious issue in this case whether this particular executory contract could have been assumed by Plaintiff [a chapter 7 trustee], since Colvin's duties under the agreement (to refrain from acting in a certain fashion) may have been akin to those involved in a personal services agreement, a type of executory contract that, under the Code, simply may not be assumed by a trustee.  *See* 11 U.S.C. § 365(c)(1)(A) (providing that an executory contract may not be assumed if "applicable law excuses a party, other than the debtor, . . . from accepting performance from . . . an entity other than the debtor. . . .")

*Id.* at *4 n.12.

Resler was a "self-employed business consultant," according to the schedules and statements filed in the case, and earned $19,000/month from such

MEMORANDUM OF DECISION - 18

work, most of which apparently came from the Consulting Agreement.[19]  That

Agreement is, on its face, a personal services contract.  Setting aside questions,

and counsel's arguments, about whether Debtor should have disclosed the

Consulting Agreement as an executory contract, Trustee could not have assumed

that contract under § 365(c).[20]

The Court finds and concludes that claims under, or for breach of, the

Consulting Agreement are not properly removable.

**B.    Claims regarding the alleged 2018 settlement agreement**

Resler's Complaint also sued Defendants on a theory of breach of an oral

contract—the alleged settlement agreement reached orally and/or documented by

emails—under which Defendants were to pay $160,000.   According to the

Complaint, the alleged settlement occurred after a March 2018 demand letter and

subsequent negotiations.  Complaint at 4–5 (¶¶ 19–24).  Even assuming for the

purposes of this Decision only that the various writings and/or other evidence

establishes an enforceable settlement agreement, it would not have existed until

---

[19]  *See* n. 13 *supra*.

[20]  Defendants argue, *inter alia*, that the failure to schedule the Consulting Agreement as
an executory contract, and then the subsequent assertion of rights under that Agreement in the
State Court Action, justifies application of the doctrine of judicial estoppel.  The doctrine
precludes a party from gaining an advantage by asserting one position and later seeking another
advantage by taking a clearly inconsistent position.  *United States v. Hart (In re Hart)*, 563 B.R.
15, 34-35 (Bankr. D. Idaho 2016) (citations omitted).  Here, assuming solely for sake of
argument that there might be such an issue, it would be one for the State Court.  *In re Pich*, 253
B.R. 562, 569 (Bankr. D. Idaho 2000) ("The interested party is . . . the court in which a litigant
takes a position incompatible with one the litigant has previously taken." (quoting *Rissetto v.
Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604–05 (9th Cir. 1996)).

MEMORANDUM OF DECISION - 19

2018, well after the bankruptcy petition's filing on April 16, 2015. The cause of action for breach of such alleged settlement agreement is manifestly a post-petition claim. Removal as to this cause is not appropriate.

### C.   Claims of fraud or misrepresentation

Resler asserts a claim for fraud or misrepresentation as an alternative theory, should it be concluded there is no enforceable settlement agreement. Complaint at 7. These claims are based on false promises regarding a new landscaping business, occurring between November 2014 and the cessation of payments under the Consulting Agreement in August 2015.

Idaho Code § 5-218(4), the statute of limitations for actions sounding in fraud, provides "[t]he cause of action in such case [is] not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id. See also McCoy v. Lyons*, 820 P.2d 360, 368 (Idaho 1991) ("The discovery rule applicable to fraud requires more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud."); *Michael v. Stephen F. Smith, Att'y at Law Chartered*, 2010 WL 9589173, *6 (Idaho App. July 15, 2010) (citing Idaho Code § 5-218(4) and *Nerco Minerals Co. v. Morrison Knudson Corp.*, 90 P.3d 894, 900 (Idaho 2004)).

As discussed above in connection with the alleged breach of the Consulting Agreement, the time of accrual of the cause of action is determinative. As to this fraud cause of action, the accrual is also postpetition. And, as with the other

MEMORANDUM OF DECISION - 20

counts of the Complaint, any arguments of such cause being "sufficiently rooted"

in the prebankruptcy past are, unavailing.  This cause of action is postpetition in

nature, and removal is inappropriate.

### D.    Conclusions on removal

Defendants, as noted earlier, bear the burden of establishing that removal is

proper.  And in considering whatever showing might be made by the removing

party, the Court is also required to independently evaluate and scrupulously

confine its jurisdiction.

Defendants have failed to establish that the Court has jurisdiction over this

action under 28 U.S.C. § 1334 as a proceeding arising under Title 11 or as one

arising in the case.  *See Harris Pine Mills*, *supra* (addressing tests for arising under

and arising in jurisdiction).[21]  Nor have Defendants adequately justified the

proposition that the Court has jurisdiction over this litigation as a "related to"

proceeding.  *See Fietz*, *supra*.

### E.    Remand

As noted at the outset of this Decision, remand can be ordered "on any

equitable ground" and this is an unusually broad grant of authority.  *See*, *e.g.*,

*McCarthy*, 230 B.R. at 417–18.  The Court may consider the same factors that

---

[21]   In attempting to buttress alleged "core" jurisdiction, Defendants assert 28 U.S.C.
§ 157(b)(2)(O).  However, this provision is to be construed narrowly.  *Wisdom v. Gugino (In re
Wisdom)*, 2015 WL 2128830 *8 (Bankr. D. Idaho May 5, 2015) (citing *Dunmore v. U.S.*, 358
F.3d 1107, 1115 (9th Cir. 2004 ) (other citations omitted).

MEMORANDUM OF DECISION - 21

apply to questions of permissive abstention.  *In re Diversified Contract Servs.,*

*Inc.*, 167 B.R. 591, 596 (Bankr. N.D. Cal. 1994).  Those factors include:

> (1) the effect or lack thereof on the efficient administration of the estate
> if the Court recommends [remand] or abstention; (2) extent to which
> state law issues predominate over bankruptcy issues; (3) difficult or
> unsettled nature of applicable law; (4) presence of related proceeding
> commenced in state court or other nonbankruptcy proceeding; (5)
> jurisdictional basis, if any, other than § 1334; (6) degree of relatedness
> or remoteness of proceeding to main bankruptcy case; (7) the substance
> rather than the form of an asserted core proceeding; (8) the feasibility
> of severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the
> bankruptcy court; (9) the burden on the bankruptcy court's docket; (10)
> the likelihood that the commencement of the proceeding in bankruptcy
> court involves forum shopping by one of the parties; (11) the existence
> of a right to a jury trial; (12) the presence in the proceeding of
> nondebtor parties; (13) comity; and (14) the possibility of prejudice to
> other parties in the action.

*Fed. Home Loan Bank of Chicago v. Banc of Am. Secs. LLC*, 448 B.R. 517, 525

(C.D. Cal. 2011).  However, "[b]ecause [28 U.S.C. § ] 1452(b) affords 'an

unusually broad grant of authority,' any one of the relevant factors may provide a

sufficient basis for equitable remand."  *Id.*

It would belabor things unnecessarily to address each factor.  Given the

above findings and conclusions as to removal, the Court concludes there is here a

lack of jurisdictional basis for retaining the matter; state law issues predominate;

attempted removal could reflect possible forum shopping; there is a demand in the

Complaint for jury trial; and there are issues of comity implicated.  The Remand

Motion will be granted.

MEMORANDUM OF DECISION - 22

**CONCLUSION**

The Court concludes that removal was not adequately justified, and the

Remand Motion, Adv. Doc. No. 3, will be granted.  The Court will enter an order

accordingly.

DATED: March 21, 2019



TERRY L. MYERS
U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 23